UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-80553-AMC

DONTE DAMES,

Plaintiff,

vs.

UNITED STATES OF AMERICA

Defendant.

_______________________________________/

**REPORT AND RECOMMENDATION ON MOTION TO DISMISS COMPLAINT [ECF No. 20]**

Donte Dames sues the United States for negligence, medical malpractice, intentional infliction of emotional distress, and false imprisonment. ECF No. 19. Mr. Dames alleges he was held involuntarily at the West Palm Beach VA Medical Center on May 13-14, 2021, which caused him mental anguish and emotional distress. *Id.*

The United States moves to dismiss the Complaint for lack of subject matter jurisdiction, and for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (b)(6).

**FACTS**

The Amended Complaint alleges that Mr. Dames went to the VA to obtain information about outpatient counseling services. ¶13.[1] After arriving, at or about 2:14 p.m., he had a video conference with Dr. Vil, a VA psychiatrist. ¶15. Dr. Vil's treatment notes say, "[Mr. Dames] agrees with admission to 3C psychiatric unit at this point . . . He is seeking admission to help with cope with [sic] some depressing issues and to regain some stability." ¶15. The VA medical team determined that Mr. Dames should be admitted for further evaluation. ¶18. Dr. Schmidt gave him the option to be voluntarily admitted or to be involuntarily admitted under the Baker Act and held for three days. ¶19. Faced with this coercive situation, Mr. Dames agreed to be voluntarily admitted. ¶21. At approximately 4:55 p.m., he was transferred to the psychiatric unit. ¶23. He was kept overnight, then released the next afternoon. ¶25.

The Government relies on several documents that Mr. Dames executed at the VA Hospital but that are not cited in, nor appended to, the Amended Complaint. *See* ECF Nos. 20-1 through 20-4. Most significantly, at 4:46 p.m. on May 13, 2021, Mr. Dames signed an Application for Voluntary Admission to have a mental health evaluation. ECF No. 20-1.[2]

---

[1] Unless otherwise noted, all paragraph numbers correspond to the paragraphs in the Amended Complaint. ECF No. 19.

[2] In ruling on a motion to dismiss, the Court may consider only the well-pled facts in the complaint and other documents that are central to the Plaintiff's claims and whose authenticity is undisputed. *Day v. Taylor,* 400 F.3d 1272, 1275-76 (11th Cir. 2005). Mr. Dames objected to the Court considering these additional materials. ECF No. 21 at 2-3. I overrule that objection. As explained more fully below, the documents do not contradict Mr. Dames' position that he was coerced into agreeing to be

## SUBJECT MATTER JURISDICTION

A court must resolve any "jurisdictional issues before considering whether a claim was stated by the complaint." *Madara v. Hall*, 916 F.2d 1510, 1514 n.1 (11th Cir. 1990) (citation omitted); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Mr. Dames bears the burden to prove that subject matter jurisdiction exists. *King v. Cessna Aircraft Co.*, 505 F. 3d 1160, 1171 (11th Cir. 2007) (citation omitted).

A. *Exhaustion*

Mr. Dames sues the United States under the Federal Tort Claims Act (FTCA) for negligence, medical malpractice, intentional infliction of emotional distress, and false arrest. ECF No. 19 (Amended Complaint). The FTCA requires a plaintiff to exhaust administrative remedies as a precondition to filing suit: "Before filing an FTCA lawsuit, an individual must 'have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing.'" *Smith v. United States*, 7 F.4th 963, 973 (11th Cir. 2021) (quoting 28 U.S.C. §2675(a)). Where administrative remedies have not been exhausted, the Court lacks subject matter jurisdiction over an FTCA claim. *See, e.g., Caldwell v. Klinker*, 646 Fed. Appx. 842 (11th Cir. 2016) (dismissing VA malpractice complaint for lack of jurisdiction because administrative remedies not exhausted).

---

admitted. Furthermore, the documents are central to Mr. Dames' claims and their authenticity is not disputed.

Although not noted by the Government, the Amended Complaint does not allege that Mr. Dames exhausted his administrative remedies.[3] At best, it says, "On June 21, 2021, a demand letter was sent to the DEFENDANTS [sic] confirming that this action would be filed should the matter not be resolved with a settlement agreement." ¶33.

Nevertheless, attached to the Government's Response is a Standard Form 95 Claim for Damage, Injury or Death signed by Mr. Dames on June 17, 2021 ("the administrative claim"). ECF No. 20-5 at 2. This lawsuit was filed April 7, 2022, before the VA had issued a final decision on the administrative claim. ECF No. 1. The administrative claim was not finally resolved until May 16, 2022. ECF No. 20-5 at 4. The Amended Complaint was filed November 2, 2022. ECF No. 19.

As this history shows, subject matter jurisdiction did not exist when the original Complaint was filed because the administrative claim had not been exhausted. The VA issued a final denial of the administrative claim before the Amended Complaint was filed. So, at the time of the Amended Complaint, the administrative claim had been exhausted. Therefore, lack of exhaustion is not a bar to this Court exercising subject matter jurisdiction over the claims asserted on the Standard Form 95.

---

[3] *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").

The Government argues that the Court lacks subject matter jurisdiction over Counts I and II to the extent they rely on lack of informed consent. It says this theory was not properly articulated in the administrative claim. ECF No. 20 at 21. The Standard Form 95 says that the basis of Mr. Dames' claim is that he was "threatened and involuntarily held against his will by the Veterans Affairs medical staff." ECF No. 20-5 §8. It then alleges that the nature of the injury was "Medical Malpractice; Intentional Infliction of Emotional Distress." *Id.* §10. These allegations are sufficient to put the VA on notice that Mr. Dames was asserting a lack of informed consent. Therefore, the Court can exercise subject matter jurisdiction over these claims.

B. *Sovereign Immunity*

Absent a waiver of sovereign immunity, the Court lacks subject matter jurisdiction over a claim against the United States. *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015); *see also Thompson v. McHugh*, 388 Fed. Appx. 870, 872 (11th Cir. 2010) ("Federal courts have jurisdiction over suits against the United States and its agencies only to the extent that sovereign immunity has been waived."). The FTCA is a limited waiver of sovereign immunity. As relevant here, it first grants federal courts exclusive subject matter jurisdiction over "civil actions on claims against the United States, for money damages . . . for personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with

the law of the place where the act or omission occurred." 28 U.S.C. §1346(b)(1). It also waives sovereign immunity to create a statutory cause of action: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. §2674. The cause of action has an "intentional tort exception;" it does not include "[a]ny claim arising out of assault, battery, false imprisonment, false arrest malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. §2680(h); *see Knezevich v. Carter*, 805 Fed. Appx 717, 724 (11th Cir. 2020).

Separately, the VA Immunity Statute, 38 U.S.C. §7316, creates a cause of action for tort claims related to negligence by VA personnel. It says "that the FTCA will provide the remedy for 'damages for personal injury, including death, allegedly arising from malpractice or negligence of a health care employee of the [VA] in furnishing health care treatment.'" *Smith v. United States*, 7 F.4th 963, 973 (11th Cir. 2021) (brackets in original). This remedy is "exclusive of any other civil action or proceeding by reason of the same subject matter." 38 U.S.C. §7316(a)(1). In sum, Section 7316(f) "makes the intentional tort exception inapplicable to any claim arising out of a negligent or wrongful act or omission by a VA healthcare employee in furnishing medical care or treatment while in the exercise of such person's duties in or for the VA." *Knezevich*, 805 Fed. Appx. at 724.

The United States argues that there is no subject matter jurisdiction over Counts III and IV, which allege intentional infliction of emotional distress and false imprisonment, because of the intentional tort exception. Mr. Dames argues in response that Section 7316(f), allows him to sue the United States for these intentional torts because they involved medical care or treatment. The United States replies that the acts alleged in the Amended Complaint were not medical care or treatment.

I find that the Amended Complaint adequately alleges a negligent or wrongful act related to medical care or treatment. Mr. Dames' theory is that VA employees coercively and involuntarily committed him to the psychiatric ward of the VA hospital even though he only sought outpatient services. At this stage of the litigation, the Amended Complaint sufficiently alleges a nexus between the wrongful acts and Mr. Dames' medical care or treatment. Therefore, the Court may exercise subject matter jurisdiction over these claims.

**RULE 12(b)(6)**

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court views the well-pled factual allegations in the light most favorable to the plaintiff. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). With limited exceptions, the Court looks only to the allegations in the complaint, any documents appended to the complaint or incorporated by reference into it, and any judicially-noticed facts. *Reed v. Royal Caribbean Cruises Ltd.*, No. 20-CV-24979-RAR,

2022 WL 3027906, at *6 (S.D. Fla. Aug. 1, 2022) (J. Ruiz); *see also supra* n.2 (discussing exception).

A pleading seeking relief in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this pleading requirement, a complaint must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N. A.*, 534 U. S. 506, 512 (2002). While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557 (alteration in original)). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U. S. at 555 (citations omitted).

The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly,* 550 U. S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 663. In addition, "courts may infer from factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer." *Am. Dental Assoc. v. Cigna Corp*., 605 F. 3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal*, 556 U. S. at 682). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557). When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U. S. at 679.

The United States makes the following arguments why the Amended Complaint fails to state a claim upon which relief can be granted:

(1) The well-pled facts in the negligence and medical malpractice claims fail to plausibly allege a breach of duty by any VA employee or damages flowing from any breach.

(2) The VA employees are shielded by the Florida Mental Health Act ("Baker Act").

(3) Florida's Impact Rule bars Mr. Dames' claim for intentional infliction of emotional distress.

(4) The VA employees' conduct was not sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress.

(5) The well-pled facts in the false imprisonment claim fail to plausibly allege that Mr. Dames was unlawfully detained or that his detention was unreasonable under the circumstances.

A. *Breach of Duty*

The Government says that, because Mr. Dames voluntarily consented to be admitted to the psychiatric ward, the Amended Complaint fails to state a claim that VA employees breached their duty of care when they admitted him for inpatient treatment. The Government cites Florida law that a written consent form creates a rebuttable presumption of informed consent, and that medical personnel are exempt from liability when informed consent exists. Fla. Stat. §766.103. The Government also asserts without citation, "Florida shields medical providers acting under the purview of the Baker Act from liability." ECF No. 20 at 8.

Mr. Dames responds that there are factual disputes that must be resolved in his favor at this stage and that preclude a 12(b)(6) dismissal. In particular, he asserts there is a dispute whether he voluntarily consented to treatment or was coerced to accept "voluntary" commitment because he was threatened with Baker Act involuntary commitment. He further argues that the factual record needs to be better developed. ECF No. 21 at 1-3.

Even viewing the Amended Complaint in the light most favorable to Mr. Dames, it fails to allege a breach of duty. I discount Mr. Dames' initial oral

consent to Dr. Vil. Even assuming Mr. Dames gave voluntary consent to Dr. Vil, he could withdraw that consent. His commitment was not formalized until after his interactions with Dr. Schmidt when he signed the written consent form. That written consent form creates a rebuttable presumption of informed consent. The sole evidence offered to rebut that presumption is Dr. Schmidt telling Mr. Dames he had to "agree voluntarily or you will be Baker acted here for 3 days." ¶19. That statement is susceptible to two equal interpretations. One is that the medical staff had in good faith decided not to release Mr. Dames and that Dr. Schmidt was giving Mr. Dames the option to elect voluntary commitment that did not require a three-day stay. The other is that the medical staff negligently and wrongfully decided to keep Mr. Dames and was using the threat of the Baker Act to coerce a voluntary commitment. Under this latter scenario, all of the subsequent paperwork is tainted by the initial coercion.

Where, as here, equally-possible alternative explanations exist, the factual averments in the Amended Complaint are "merely consistent with" a defendant's liability, and therefore "stop[] short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557). So, the Amended Complaint fails to state a plausible claim that the VA employees breached their duty of care. For that reason, Counts I and II should be dismissed.

B. *Impact Rule*

The Government next argues that Count III (intentional infliction of emotional distress) must be dismissed under the "impact rule." "The impact rule, as applied in Florida, requires that 'before a plaintiff can recover damages for emotional distress

caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.'" *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 206 (Fla. 2007) (citations omitted). Although not cited by either party, binding precedent from the Florida Supreme Court holds that "the impact rule does not apply to any intentional torts, such as defamation, invasion of privacy, and intentional infliction of emotional distress." *Id.* at 206–07 (citing *Rowell v. Holt*, 850 So. 2d 474, 478 n.1 (Fla. 2003). Therefore, the impact rule is not a basis to dismiss Count III.

C. *Outrageous Behavior*

The Government also moves to dismiss Count III for failing to plead a plausible claim of outrageous behavior. Under Florida law, the elements of intentional infliction of emotional distress are that "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015). To satisfy the second element, the defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metropolitan Life Insurance Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985) (quoting Restatement (Second) of Torts §46 (1965)). "While there is no exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard." *Broberg v. Carnival Corp.*, 303

F. Supp. 3d 1313, 1317–18 (S.D. Fla. 2017) (J. Moreno) (citations omitted). Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law for the court to decide, not a question of fact. *Blair v. NCL (Bahamas) Ltd.*, 212 F. Supp. 3d 1264, 1269-70 (S.D. Fla. 2016) (J. Seitz).

Mr. Dames argues that forcing him into an unwanted commitment was sufficiently outrageous to support a claim for intentional infliction of emotional distress.[4] Here, again, the Government argues that Mr. Dames voluntarily agreed to be kept for observation, so its conduct was not outrageous. Even viewing the evidence in the light most favorable to Mr. Dames, the Amended Complaint does not allege a plausible claim of outrageous behavior. As discussed above, even assuming Mr. Dames did not voluntarily consent to be admitted to the psychiatric ward, there is an equally-possible benign explanation for the VA's conduct. Moreover, the Amended Complaint does not plead facts establishing a plausible claim that the VA staff had any improper motive to keep Mr. Dames. In any event, involuntarily committing someone who came to the VA for outpatient mental health treatment, even if the decision to do so was wrongful, is not "beyond all bounds of decency, and odious and utterly intolerable in a civilized community." *See Johnson v. Massey*, No. 20-CV-410, 2023 WL 2167441, at *13-15 (N.D. Fla. Jan. 27, 2023) (collecting cases which held that various allegations of disturbing conduct were not sufficiently outrageous to

---

[4] Mr. Dames argues that evidence to be obtained in discovery will show that the conduct was outrageous. ECF No. 21 at 4. That argument has no place here. A 12(b)(6) motion is not evaluated on the evidence to be developed later in discovery.

support claims for intentional infliction of emotional distress), *report and recommendation adopted*, 2023 WL 2163942 (N.D. Fla. Feb. 21, 2023).

D. *Unlawful Detention*

The Government moves to dismiss Count IV (false imprisonment) for failing to plead a plausible claim that keeping Mr. Dames overnight at the VA Hospital was unlawful or unreasonable under the circumstances. "To state a cause of action for false imprisonment, the plaintiff must establish: '1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' ... 4) which is unreasonable and unwarranted under the circumstances.'" *Archer v. City of Winter Haven*, 846 Fed. Appx. 759, 763 (11th Cir. 2021) (citations omitted). The Government challenges the third and fourth elements. It repeats its argument that Mr. Dames consented to treatment. Alternatively, it argues that the Amended Complaint does not negate that there was a valid basis to invoke the Baker Act. Under either scenario, the overnight detention was legal, reasonable, and warranted under the circumstances.

Mr. Dames does not directly respond to these arguments. He argues that further discovery will show the elements of false imprisonment. ECF No. 21 at 4.

The Government's arguments are persuasive. The Amended Complaint does not negate that there was a factual basis to invoke the Baker Act. So, even if Mr. Dames was coerced to consent to voluntary commitment, there was a legal basis to commit him involuntarily. Count IV should be dismissed.

**REPORT AND RECOMMENDATION**

Accordingly, this Court **RECOMMENDS** that the District Court GRANT the Motion to Dismiss the Complaint.

**NOTICE OF RIGHT TO OBJECT**

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and ORDERED** in Chambers this 18th day of April, 2023, at West Palm Beach in the Southern District of Florida.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE